JUDGE KARAS

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Jonathan D. Morley
_____

_____

Write the full name of each plaintiff.

-against-

International Business Machines Corporation
_____

_____

_____

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

# 19 CV 11694

_____CV_____

(Include case number if one has been assigned)

## COMPLAINT

Do you want a jury trial?
☑ Yes    ☐ No

RECEIVED
SDNY DOCKET UNIT
2019 DEC 20  PM 2: 05

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

Rev. 1/9/17

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐   **Federal Question**

☑   **Diversity of Citizenship**

## A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

## B.   If you checked Diversity of Citizenship

### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , **Jonathan D. Morley** _____ , is a citizen of the State of
(Plaintiff's name)

**Connecticut** _____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____.

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
                        (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, International Business Machines Corporation , is incorporated under the laws of

the State of __New York_____

and has its principal place of business in the State of __New York_____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II. PARTIES

## A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

| Jonathan | D. | Morley |
|---|---|---|
| First Name | Middle Initial | Last Name |

__100 Commons Park N #115__

Street Address

| Fairfield, Stamford | Connecticut | 06902 |
|---|---|---|
| County, City | State | Zip Code |

__475-747-0211__                        jdmorley@gmail.com

Telephone Number                        Email Address (if available)

## B.   Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:  International Business Machines Corporation

| First Name | Last Name |
| --- | --- |

Current Job Title (or other identifying information)

1 New Orchard Road

Current Work Address (or other address where defendant may be served)

| Westchester, Armonk | New York | 10504 |
| --- | --- | --- |
| County, City | State | Zip Code |

Defendant 2:

| First Name | Last Name |
| --- | --- |

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
| --- | --- | --- |

Defendant 3:

| First Name | Last Name |
| --- | --- |

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
| --- | --- | --- |

Defendant 4: _____

First Name                    Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                    State                    Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence:  **Stamford, Connecticut**

Date(s) of occurrence:  **May 2016 - December 2017**

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

See Exhibit A

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

No Physical Injuries
_____

_____

_____

_____

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

See Exhibit A
_____

_____

_____

_____

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| December 20, 2019 | | |
|---|---|---|
| Dated | | Plaintiff's Signature |
| Jonathan | D. | Morley |
| First Name | Middle Initial | Last Name |
| 100 Commons Park N #115 | | |
| Street Address | | |
| Fairfield, Stamford | Connecticut | 06902 |
| County, City | State | Zip Code |
| 475-747-0211 | jdmorley@gmail.com | |
| Telephone Number | Email Address (if available) | |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☑ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____

| | | | |
|---|---|---|---|
| Morley, Jonathan, D. | | | |
| Name (Last, First, MI) | | | |
| 100 Commons Park N #115 | Stamford | Connecticut | 06902 |
| Address | City | State | Zip Code |
| 475-747-0211 | | jdmorley@gmail.com | |
| Telephone Number | | E-mail Address | |
| December 20, 2019 | | | |
| Date | | Signature | |

Return completed form to:

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007

**The United States District Court**

**for the Southern District of New York**

**White Plains, New York**

| | |
|---|---|
| Jonathan D. Morley | |
| Plaintiff, | |
| v. | **EXHIBIT A** |
| | **TO COMPLAINT** |
| International Business | |
| Machines Corporation | |
| Defendant | |

Table of Contents

A. PARTIES...................................................................................................2

B. STATEMENT OF CLAIM..........................................................................3

Defendant has failed to pay commissions/wages that are due to the Plaintiff for services he performed as an employee of the Defendant, as further described in the Counts in this Complaint ...................................................................................................3

COUNT I     FRAUDULENT MISREPRESENTATION.............................................3

COUNT II    NEGLIGENT MISREPRESENTATION ...............................................4

COUNT III   UNJUST ENRICHMENT ....................................................................5

COUNT IV   QUANTUM MERUIT .........................................................................6

COUNT V    VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT ......,........7

COUNT VI   DOUBLE DAMAGES FOR BREACH OF WAGE AND HOUR STATUTE ........7

COUNT VII  PUNITIVE DAMAGES........................................................................9

C. FACTS...................................................................................................10

   1. Factual allegations ..............................................................................10

   2. Plaintiff's Facts ..................................................................................15

D. RELIEF .................................................................................................21

## A. PARTIES

1.     Plaintiff ("Mr. Morley") is a citizen of Stamford, Connecticut.

2.     Mr. Morley worked for the Defendant, International Business Machines Corporation ("IBM"), from approximately May 2016 through December 2017.

3.     IBM was incorporated, and is existing, under the laws of the State of New York.

4.     IBM's principal place of business is in the State of New York.

5.     IBM was and is an employer under the Connecticut General Statutes and common law.

6.     IBM employed Plaintiff to perform sales work for IBM in Connecticut and New York State.

## B. STATEMENT OF CLAIM

Defendant has failed to pay commissions/wages that are due to the Plaintiff for services he performed as an employee of the Defendant, as further described in the Counts in this Complaint.

## COUNT I    FRAUDULENT MISREPRESENTATION

1. Section C "FACTS" of this Attachment A, together with other facts stated in the other Counts herein are incorporated into this Count.

2. Plaintiff additionally states the following:

   a. During his interview process in April 2016 for the Cleversafe Systems/Cloud Storage Sales Leader position IBM Executive Michael Brooks stated to Mr. Morley that his sales commissions in his payment plan for his new position at IBM would be uncapped for his products.

   b. In approximately February 2017 IBM Executives Michael Healy and Michael Brooks presented to Mr. Morley and stated in a sales commissions PowerPoint presentation to Mr. Morley that his sales commissions would be uncapped for his products.

   c. Furthermore, in approximately February 2017 IBM Executives Michael Healy and Michael Brooks provided Mr. Morley copies of the sales commissions PowerPoint presentation documents that explicitly stated that commissions would be uncapped for his products.

   d. Mr. Morley relied on factual statements made by Michael Brooks as the basis to leaving his position at EMC Corporation and joining IBM.

3

e. During his employment with IBM Mr. Morley relied on presentations made by IBM PowerPoint presentations documents sent to Mr. Morley by IBM Executives Michael Healy and Michael Brooks to perform large deal sales for IBM.

f. IBM with knowledge of falsity, via many other suits against IBM in respect to "uncapped commissions" verbally through its executives and via PowerPoints made false statements to Mr. Morley that his sales commissions at IBM for his products would be uncapped in order to induce reliance from Mr. Morley to leave his existing employer, EMC Corporation, as top performing sales representative and join IBM as the Cleversafe Systems/Cloud Storage Sales Leader. IBM has caused Mr. Morley monetary damages by hiring him, inducing Mr. Morley to make large deal sales for IBM and then failing to pay Mr. Morley his commissions.

## COUNT II   NEGLIGENT MISREPRESENTATION

2. Section C "FACTS" of this Attachment A, together with other facts stated in the other Counts herein are incorporated into this Count.

3. Plaintiff additionally states the following:

a. During his interview process in April 2016 for the Cleversafe Systems/Cloud Storage Sales Leader position IBM Executive Michael Brooks stated to Mr. Morley that his sales commissions in his payment plan for his new position at IBM would be uncapped for his products.

b. In approximately February 2017 IBM Executives Michael Healy and Michael Brooks presented to Mr. Morley and stated in a sales commissions PowerPoint presentation to Mr. Morley that his sales commissions would be uncapped for his

products.

c.  Furthermore, in approximately February 2017 IBM Executives Michael Healy and Michael Brooks provided Mr. Morley copies of the sales commissions PowerPoint presentation documents that explicitly stated that commissions would be uncapped for his products.

d.  Mr. Morley relied on factual statements made by Michael Brooks as the basis to leaving his position at EMC Corporation and joining IBM.

e.  During his employment with IBM Mr. Morley relied on presentations made by IBM PowerPoint presentations documents sent to Mr. Morley by IBM Executives Michael Healy and Michael Brooks to perform large deal sales for IBM.

f.  IBM with knowledge of falsity, via many other suits against IBM in respect to "uncapped commissions" verbally through its executives and via PowerPoints made false statements to Mr. Morley that his sales commissions at IBM for his products would be uncapped in order to induce reliance from Mr. Morley to leave his existing employer, EMC Corporation, as top performing sales representative and join IBM as the Cleversafe Systems/Cloud Storage Sales Leader.  IBM has caused Mr. Morley monetary damages by hiring him, inducing Mr. Morley to make large deal sales for IBM and then failing to pay Mr. Morley his commissions.

**COUNT III   UNJUST ENRICHMENT**

1.  Section C "FACTS" of this Attachment A, together with other facts stated in the other Counts herein are incorporated into this Count

2.  Plaintiff additionally states the following:

a.  The Defendants was benefited when commissions due the Plaintiff were not paid.

b.  The Defendant unjustly did not pay the Plaintiff for the work done in completing the sales as Plaintiff had performed the services that resulted in the sales related to the unpaid commissions.

c.  The failure to pay was to the detriment of Plaintiff as he did not receive his total sales commissions.

d.  No enforceable contract exists. The Defendant's own document, the IPL states that it is not a contract and the Defendant has taken this position in many court cases.

## COUNT IV  QUANTUM MERUIT

1.  Section C "FACTS" of this Attachment A, together with other facts stated in the other Counts herein are incorporated into this Count.

2.  Plaintiff additionally states the following:

a.  The Plaintiff performed sales services for IBM.

b.  The services were performed at IBM's request, on accounts that were assigned to the Plaintiff.

c.  The services remain unpaid.

d.  No enforceable contract exists. The Defendant's own document, the IPL states that it is not a contract and the Defendant has taken this position in many court cases.

e.  Plaintiff had a reasonable expectation of receiving compensation for

6

the services rendered as result of the Defendant's IPLs.

## COUNT V   VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT

Connecticut General Statutes Title 42 Chapter 735a Section 42-110 b

1.  Section C "FACTS" of this Attachment A, together with other facts stated in the other Counts herein are incorporated into this Count.

2.  Plaintiff additionally states the following:

    a.  The Defendant's practice of capping commissions and the fact that this was done in this case is unfair because it had previously represented that the commissions were "uncapped".

    b.  The Plaintiff actually relied on documents recounted in section C FACTS of this Exhibit A.

    c.  In the documents recounted in section C FACTS of this Exhibit A the Defendant knowingly misrepresented to the Plaintiff that the commissions were 1) uncapped and 2) would be paid in accordance with the IPL's

    d.  The misrepresentation in the on documents recounted in section C FACTS of this Exhibit A were the immediate cause of Plaintiff's damages as the Plaintiff continued to work on the sales opportunities as a result of the documents recounted in section C FACTS of this Exhibit A.

## COUNT VI   DOUBLE DAMAGES FOR BREACH OF WAGE AND HOUR STATUTE

1.  Section C "FACTS" of this Attachment A, together with other facts stated in the other Count herein are incorporated into this Count.

2.  Plaintiff additionally states the following:

7

3. Connecticut General Statutes Title 31 Chapter 558 Section 31-58 (h) states

   ""Wage" means compensation due to an employee by reason of his employment;"

4. Connecticut General Statutes Title 31 Chapter 558

   "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k or where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole or to make payments to an employee welfare fund, such employee or labor organization shall recover, in a civil action, **(1) twice the full amount of such wages**, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court. Any agreement between an employee and his or her employer for payment of wages other than as specified in said sections shall be no defense to such action.

5. Connecticut General Statutes Title 31 Chapter 558 Section 31-71 d states:

   "Payment where wages disputed.

   (a) In case of a dispute over the amount of wages, the employer shall pay, without condition and within the time set by sections 31-71a to 31-71i, inclusive, all wages, or parts thereof, conceded by him to be due, and the employee shall have all remedies provided by law, including those under said sections as to recovery of any balance claimed.

   (b) The acceptance by any employee of a payment under this section shall not constitute a release as to the balance of his claim and any release required by an employer as a condition to payment shall be void."

6. Plaintiff was not paid the Wages he earned

8

**COUNT   VII PUNITIVE DAMAGES**

1. Section C "FACTS" of this Attachment A, together with other facts stated in the other

   Counts herein are incorporated into this Count.

2. Plaintiff additionally states the following:

3. Connecticut General Statutes Title 42 Chapter 735a Section 42-110 g (a) states

> (a) Any person who suffers any ascertainable loss of money or property, real or
> personal, as a result of the use or employment of a method, act or practice
> prohibited by section 42-110b, may bring an action in the judicial district in which
> the plaintiff or defendant resides or has his principal place of business or is doing
> business, to recover actual damages. Proof of public interest or public injury shall
> not be required in any action brought under this section. The court may, in its
> discretion, **award punitive damages** and may provide such equitable relief as it
> deems necessary or proper.

4. IBM continued to entice Sales Executives away from their jobs with competitors by using

   IBM's representation of "uncapped commissions", even after IBM knew the

   representation was untrue.

5. Other Connecticut statues provide for Punitive Damages.

## C. FACTS

**1. Factual allegations**

1.    IBM is a global technology company that provides hardware, software, cloud-based services, and cognitive computing.

2.    IBM employs sales representatives and managers throughout the United States that it tasks with selling its products and services.

3.    During all relevant times, IBM's employees that earn sales commissions have typically been on one of seven types of commissions plans.

4.    Typically, under these plans the employees are provided with an annual compensation number called "on-target earnings" ("OTE") which is what the individual's total compensation will be if the individual achieves 100% of his/her quota for the year. The OTE is split between a base salary and commissions. The two most common splits are 55/45 (where 55% of the compensation comes from the base salary, and 45% comes from sales commissions) and 70/30 (where 70% of the compensation comes from a base salary, and 30% comes from sales commissions).

5.    Three of those commission plans are categorized as Individual Plans, three are Pool Plans, and one is categorized as a Services Plan.

6.    The three Individual Plans are:

(1) Individual Quota Plan (IQP),

(2) Absolute Sales Plan – Straight Rate, and

(3) Absolute Sales Plan – Opportunity Based.

7.     Commissions under these plans are uncapped and paid based on achievement results (i.e., the amount of products and services sold) rather than on an assessment of employee contribution.

8.     The three Pool Plans are: (1) Team Quota Plan, (2) Solutions for Growth Plan, and (3) Performance Pool Plan.

9.     Under the pool plans, a set amount of commissions is divided among groups of employees based on achievement by the group as a whole.

10.    The Services Plan is a commissions plan that is available to executives and other roles that are focused on large contract delivery, customer satisfaction, and base growth.

11.    IBM splits each calendar year into two sales periods and typically refers to those as the 1H (first half) and 2H (second half).

12.    At the beginning of each sales period, IBM provides each sales representative with a substantially similar, standardized document called an Incentive Plan Letter ("IPL").

11

13.     The IPLs are typically about five pages long and contain some limited information that is specific to each individual sales representative, such as the representative's quota for that period, the territory the sales representative is responsible for, and the rate at which the sales representative will earn commissions for that period.

14.     The majority of the five pages is devoted to uniform disclaimers. These disclaimers are the same in each sales representative's IPL for each sales period.

15.     Among other things, the disclaimers state that the IPL "is not an express or implied contract or a promise by IBM" to pay commissions to that employee.

16.     Most employers selling similar products do not cap commissions, and that if IBM advertised that it capped commissions, that would affect IBM's ability to recruit.

17.     IBM does not have any other contract with its Connecticut based sales employees who earn commissions regarding the calculation and payment of those commissions.

18.     IBM has routinely failed to pay employees the commissions reflected by the quotas contained in IPLs and other inputs shown on IBM's online commissions workplace.

19.     As a result, several sales representatives and managers have sued IBM

for not paying them commissions that they were owed.

20.     Each time, IBM's defense has been the same: IBM owes nothing because the employees do not have an enforceable contract for the payment of commissions. IBM claims that the IPL is not an enforceable contract, nor is there any other enforceable contract. IBM employs tens if not hundreds, of sales representatives and managers throughout California who earn sales commissions. However, IBM does not provide those employees with a written, signed, enforceable contract regarding their commissions.

21.     Instead, IBM provides its sales representatives with a letter that expressly states it is not a contract or promise by IBM to pay any sales commissions. IBM explains its commissions plans with documents that promise uncapped sales commissions and encourage sales representatives to exceed their quotas each sales period.

22.     However, IBM often caps sales commissions or otherwise does not pay the full commissions due to sales representatives. As a result, it has been sued over two dozen times around the country (including at least six times in California) for failing to pay sales representatives the commissions they were due. Each time, IBM has taken the position in court that it was not obligated to pay any commissions to the representatives because it did not have a contract that required payment of the commissions.

23.     IBM's sales representatives and even managers are often surprised to

learn that IBM does not have a binding contract to pay them sales commissions.

24.     Indeed, IBM has argued that the IPL is not an enforceable contract, nor

is there any other enforceable contract in each of the following cases:

:

  a. *Gilmour v IBM*, Case No. CV 09-04155 SJO (C.D. Cal.);

  b. *Schwarzkopf v. IBM*, Case No. CV 08-2715 JF (N.D. Cal.);

  c. *Kemp v. IBM*, Case No. 3:09-cv-03683 (N.D. Cal);

  d. *Pfeister v. IBM*, Case No. 17-cv-03573 (N.D. Cal.);

  e. *Swafford v. IBM*, Case No. 5:18-CV-04916 (N.D.Cal.);

  f. *Beard v. IBM*, Case No. 3:18-CV-06783 (N.D. Cal.);

  g. *Geras v. IBM*, Case No. 10cv-00001-WDM-CBS (D.Colo.);

  h. *Bereuter v. IBM*, Case No. 8:10-cv-327 (D. Neb.);

  i. *Kavitz v IBM*, Case No. 4:08-cv-5591 (S.D.N.Y.);

  j. *Pero v. IBM*, Case No. 12-cv-07484 (D.N.J.);

  k. *Wilson v. IBM*, Case No. 1:12-cv-1406 (N.D. Ga.);

  l. *Tang v. IBM*, Case No. 2014-11444 (Cir. Ct. Fairfax Cty., Va.);

  m. *Chiaffitelli v. IBM,* case No.003150/11 (Sup.Ct. NY, Nassau County);

  n. *Rapier v. IBM*, Case No. 1:17-CV-4740 (N.D. Ga.);

  o. *Snyder v. IBM*, Case No. 1:16-CV-03596 (N.D. Ga.);

  p. *Morris v. IBM*, Case No. 18-CV-0042 (W.D. Tex.);

  q. *Choplin v. IBM*, Case No. 1:16-CV-1412 (M.D.N.C.);

  r. *Stephenson v. IBM*, Case No. 1:17-CV-1141 (M.D.N.C.);

  s. *Vinson v. IBM*, Case No. 1:17-CV-00798 (M.D.N.C.);

  t. *Middleton v. IBM*, Case No. 1:18-CV-03724 (N.D. Ga.);

u.  *Fessler v. IBM*, Case No. 1:18-CV-00798 (E.D.Va.);

v.  *Lamping v IBM*, 2005 WL 4693547 (W.D. Pa.);

w.  *Cashman v IBM*, Case No. 05-10306-RWZ (D. Mass.);

x.  *Jensen v IBM*, Case No. 04-CA-1316 (E.D. Va.);

y.  *Rudolph v IBM*, Case No. 09-C-428 (N.D. Ill.);

z.  *Camobreco v. IBM*, Case No. 1:19-CV-10242 (D. Mass.)

aa. *Martignetti v. IBM*, Case No. 1:18-CV-02431 (D. Md.).

25.     IBM' position was that the IPLs at issue "did not create a contractual obligation that required IBM to pay Plaintiff additional commissions."

26.     Moreover, IBM argued on appeal in *Middleton* that "Middleton's IPL, while failing to create any contractual obligations requiring IBM to pay him commissions, was a document that spelled out the parties' respective rights and responsibilities regarding the payment of commissions."

27.     Without an enforceable contract the commissions would simply be discretionary bonuses, which IBM's sales commissions undisputedly are not.

## 2. Plaintiff's Facts

1.     Mr. Morley started his employment at IBM as a Cleversafe Systems/Cloud Storage Sales Leader on May 3, 2016.  In his previous employment with EMC Corporation, Mr. Morley had been an exceptionally high-performer, overachieving his targeted commission plan by 190% prior to being employed by IBM.

2.      During his employment with IBM, Mr. Morley was responsible for selling IBM products, services, software and systems support.

3.      At all relevant times, Mr. Morley's compensation consisted of a base salary paired with incentive commissions with uncapped commissions.

4.      From May 3, 2016 until approximately August 31, 2017 Mr. Morley was on an IBM Individual Quota Plan.

5.      From May 3, 2016 until Approximately August 31, 2017 Mr. Morley was on an approximately 54.47% Base pay / approximately 45.33% Target incentive pay package.

6.      From approximately September 2017 to December 31, 2017 Mr. Morley was on an IBM Pool Quota Plan.

7.      From September 2017 until Approximately December 31, 2017 Mr. Morley was on a 66.66% Base pay / 33.33% Target incentive pay package.

8.      For each sales period, Mr. Morley was provided with a document titled an IPL, which described some of the terms of his commissions plan.

9.      In each sales period the IPL expressly stated that it was not an express or implied contract for the payment of commissions.

10.     During his employment at IBM Mr. Morley was not provided any other contract for the payments of his commissions by IBM.

11.     During his employment with IBM, three different times IBM did not pay Mr. Morley the full commissions he earned on deals.

12.     The first situation was a deal involving the sale of an IBM product named IBM Cloud Object Storage with Spectrum Suite to Deutsche Bank in June 2017 ("Deutsche Bank Deal").

13.     The IBM Sales Commission PowerPoint presentation documents for the relevant period specifically states "COS Sellers benefit from the "triple dip"".

14.     The IBM Sales Commission PowerPoint presentation documents for the relevant period specifically states "Spectrum Suite sales:  add 14% credit."

15.     The IBM Sales Commission PowerPoint presentation documents for the relevant period specifically states "Credit for all net new revenue (NOT CAPPED)."

16.     The IBM Sales Commission PowerPoint presentation documents for the relevant period specifically states "AND eligible for payment via the on-top pool (the on-top pool does not contribute towards attainment or accelerators)."

17.     The IBM Sales Commission PowerPoint presentation documents for the relevant period specifically reinforces "Credit for all net new revenue (uncapped)".

18. The Deutsche Bank Deal consisted of revenue to IBM from Mr. Morley's products of approximately $2,250,000 over the life of the deal via IBM's Enterprise License Agreement (ELA).  Of this, $2,250,000 million should have been credited to him for purposes of calculation of his commissions plus 14% credit for Spectrum Suite sales; the total commissionable revenue for the Deutsche Bank Deal is $2,565,000.  The total commission due to Mr. Morley under the IPL due to Mr. Morley is approximately $75,476.48.  Instead, IBM did not pay Mr. Morley any commission on the Deutsche Bank Deal.

19.     Despite the fact that Mr. Morley performed the work, and closed the deal related to his products, after the Deutsche Bank Deal closed IBM assigned the majority of the revenue attributed to the products and services that he sold to other IBM departments, and instead IBM did not pay Mr. Morley any commission on the Deutsche Bank Deal.

20.     Mr. Morley was provided an extremely vague explanation by the VP of Sales for IBM Cloud Object Storage at the relevant time period, Michael Healy, as to why he was not paid any commission for the Deutsche Bank Deal.

21.     The second situation was a deal involving the sale of an IBM product named IBM Cloud Object Storage to Simmons Bank in October 2017 ("Simmons Bank Deal").

22.     The Simmons Bank Deal consisted of revenue to IBM from Mr. Morley's products of approximately $90,000 in IBM Annual Contract Value (ACV) over the life of the deal. Of this, $90,000 should have been credited to him for purposes of calculation of his commissions. The commission due to Jonathan Morley under the IPL due to Jonathan is approximately $10,138.70. Instead, IBM did not pay Mr. Morley any commission on this deal.

23.     Despite the fact that Mr. Morley performed the work, and closed the deal related to his products, after the Simmons Bank Deal closed, and his manager at the relevant time period, Kumar Abhijeet, committed to Mr. Morley in writing that he would be paid on the Simmons Bank Deal in his year-end commission check, IBM assigned the majority of the revenue attributed to the products and services that he sold to other team members, and did not pay Mr. Morley any sales commission on the Simmons Bank Deal.

18

24.     The third situation was a deal involving the sale of an IBM product named IBM Cloud Object Storage to GEICO in November 2017 ("GEICO Deal").

25.     The GEICO Deal consisted of revenue to IBM from Mr. Morley's products of approximately $2,045,160 in IBM Annual Contract Value (ACV) over the life of the deal.  Of this, $2,045,160 million should have been credited to him for purposes of calculation of his commissions.  The commission due to Jonathan Morley under the IPL due to Jonathan is approximately $230,391.83.  Instead, IBM did not pay Mr. Morley any commission on the GEICO Deal.

26.     Despite the fact that Mr. Morley performed the work, and closed the deal related to his products, after the GEICO Deal closed, and his manager at the relevant time period, Kumar Abhijeet, committed to Mr. Morley in writing that he would be paid on the GEICO Deal in his year-end commission check, IBM assigned the majority of the revenue attributed to the products and services that he sold to other team members, and did not pay Mr. Morley any sales commission on the GEICO Deal.

27.     Mr. Morley was not provided any explanation why he was not paid a sales commission for the GEICO Deal or the Simmons Bank Deal.

28.     In approximately April 2018 the Worldwide VP of Cloud Platform at IBM at the relevant time period, Dave Simpson, committed to Mr. Morley that he would be provided the opportunity by IBM to a fair process of challenging his unpaid commissions and presenting his side of the story.  IBM failed at providing Mr. Morley this fair process and an opportunity to challenge his unpaid commissions.

29.     Mr. Morley has subsequently requested IBM in writing for documents related to his unpaid commissions in December 2018.  Mr. Morley has not been provided the entire list of documents by IBM that he requested.

30.     Mr. Morley's 1H 2017 Incentive Plan states that Mr. Morley's Sales Revenue Quota for 1H2017 is $1,000,000.  The Sales Revenue Quote represents approximately 45% of Mr. Morley's 1H2017 incentive pay.

31.     Mr. Morley's 2H 2017 Incentive Plan states that Mr. Morley's Annual Contract Value (ACV) Portion of his Sales Quota for 2H2017 is approximately $279,000 and that the Annual Contract Value represents approximately 30% of Mr. Morley's 2H2017 incentive pay.

32.     After his departure from IBM Mr. Morley had a telephone conversation with the VP of Sales for IBM Cloud Object Storage at the relevant time period, Michael Healy to discuss his commissions.  Mr. Morley questioned Michael Healy who was responsible at IBM for making the decision not to pay Mr. Morley his commissions. Michael Healy replied to Mr. Morley "I did" "It was me" "I made the decision not to pay you."

33.     The total unpaid commissions owed to Mr. Morley by IBM is equal to approximately $316,007.

## D. DEMAND FOR RELIEF

1.  The Court grant restitution to Plaintiff and require IBM to disgorge ill-gotten gains and monies by which it was unjustly enriched in amount of $316,007;

2.  The Court award the Plaintiff double damages pursuant to Connecticut General Statutes Title 31 Chapter 558 Section 31-71 d;

3.   The Court award the Plaintiff punitive damages pursuant to Connecticut General Statutes Title 42 Chapter 735a Section 42-110 g;

4.  The Court award attorneys' fees to Plaintiff pursuant Connecticut General Statutes Title 42 Chapter 735a Section 42-110 g and any other applicable law;

5.  The Court award Plaintiff pre-judgment and post-judgment interest at the highest legal rate provided by law;

6.  That all costs of this action be taxed against IBM; and

7.  That the Court award Plaintiff such other and further relief as this Court may deem just and proper.